UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

SEP 29 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| JEFFERSON MORLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Case No. 03-2545 (RJL) |
| v. | ) |
| | ) |
| UNITED STATES CENTRAL | ) |
| INTELLIGENCE AGENCY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
(September 29, 2006) [#45, #63]

Plaintiff, Jefferson Morley, brings this action against the Central Intelligence Agency ("CIA" or "Agency") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* (2000), seeking records pertaining to deceased CIA operations officer George Efython Joannides. Currently before the Court are Cross-Motions for Summary Judgment. After reviewing the Motions and upon consideration of the entire record herein, the defendant's Motion is GRANTED and plaintiff's Motion is DENIED.

## BACKGROUND

On July 4, 2003, plaintiff, a journalist and news editor at washingtonpost.com, submitted a FOIA request letter to defendant seeking "all records pertaining to CIA operations officer George Efython Joannides, (also known as 'Howard,' 'Mr. Howard' or 'Walter Newby'), including, but not limited to" seventeen specific categories of records. (Compl. ¶ 4, Ex. 1 ("Morley Letter") at 1-2.) Plaintiff further requested that "[i]f any records pertaining to the subject of this request have been processed for another requester,

please notify [plaintiff] immediately . . . ." (Morley Letter at 3.)  Plaintiff claims that George Joannides, by virtue of his position as a U.S. government employee, "was uniquely well-positioned to observe and report" on the assassination of President John F. Kennedy. (Morley Letter at 3.)  He further alleges that the materials sought are of great public interest because they "promise to shed light on the confused investigatory aftermath of the assassination." (Morley Letter at 3.)

By letter dated November 5, 2003, defendant acknowledged receipt of plaintiff's FOIA request. (Compl. ¶ 5.; Compl., Ex. 2 ("CIA Letter") at 1.)  In that letter, defendant advised plaintiff that "CIA records on the assassination of President Kennedy have been re-reviewed under the classification guidelines for assassination-related records of the President John F. Kennedy Assassination Records Collection Act of 1992," and that "[t]hese records have been transferred to the National Archives and Records Administration (NARA) in compliance with this Act." (CIA Letter at 1.)  Additionally, defendant informed plaintiff that these records "have been re-reviewed by the Presidentially-appointed Assassination Records Review Board . . . . Following review by the Board, these records were returned to NARA's JFK Assassination Records Collection." (CIA Letter at 1.)  The letter provided plaintiff with the address at NARA where he should make a request for the records sought.  The letter further informed plaintiff that in addition to relevant CIA records, NARA's collection contains records of the Federal Bureau of Investigation "(FBI")," various other Executive Branch agencies, relevant Congressional committees, those donated by private entities, and related court

cases, all of which are also searchable electronically through NARA's website.  (CIA Letter at 2.)

On December 16, 2003, plaintiff filed his Complaint for injunctive relief in this Court.  On April 9, 2004, defendant filed a motion to stay the proceedings pursuant to *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976) and 5 U.S.C. § 552(a)(6)(c), pending defendant's processing of plaintiff's request. (Def.'s Mot. for Pl.'s Stay at 1.)  This Court granted defendant's motion on September 2, 2004.

Defendant responded to plaintiff's FOIA request by letter dated December 22, 2004, informing plaintiff that it had "completed a reasonable search for records responsive to [plaintiff's] request" and that it had searched for records in existence as of September 9, 2004. (Def.'s Mot. Summ. J., Ex. E at 2.)  Enclosed with the letter were three documents that could be released in their entirety and 112 documents that could be "released in segregable form with deletions made on the basis of FOIA exemptions (b)(1), (b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(c), and (b)(7)(e)." (*Id.*)  Defendant also identified two documents that required it to consult with another federal agency and stated that it would provide a "supplemental response" after consulting with that agency.  (*Id.* at 3.) Defendant further informed plaintiff that it had located additional material that it determined was classified and "must be denied in its entirety on the basis of FOIA exemptions (b)(1), (b)(3), and (b)(6)," and that it could "neither confirm nor deny the existence or nonexistence of records . . . regarding Mr. Joannides [sic] participation in any covert project, operation, or assignment unless of course previously acknowledged." (*Id.*

at 2.)  Lastly, defendant advised plaintiff that there were seventy-eight documents on the subject of plaintiff's request that were publicly released under the President John F. Kennedy Assassination Records Collection Act of 1992 ("JFK Act"), and that they are publicly available at the National Archives.  (*Id.* at 3.)

On February 1, 2005, defendant released in segregable form the two documents that required it to consult with another federal agency (Def.'s Mot. Summ. J., Ex. F), and on May 9, 2005, defendant supplemented its disclosure with an additional document, also released in segregable form, which it inadvertently failed to include in its earlier disclosure and informed defendant that it had identified additional material that was classified and thus must be denied in its entirety (Def.'s Mot. Summ. J., Ex. G).

Plaintiff commenced the instant action to challenge the adequacy of defendant's search and its later invocation of FOIA Exemptions (b)(1), (b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(c), and (b)(7)(e) to withhold materials from disclosure.

## DISCUSSION

### I.       Standard of Review

#### 1.       Federal Rule of Civil Procedure 56

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Under Rule 56, summary judgment should "be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  In deciding whether there is

a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where the court finds that facts material to the outcome of the case are at issue, a case may not be disposed of by summary judgment. *Id.* at 248. If the facts in dispute are "merely colorable, or . . . not significantly probative, summary judgment may be granted." *Id.* at 249-50. Although the moving party bears the burden of establishing that there are no genuine issues of material fact and that judgment on the legal issues is appropriate in its favor, Federal Rule of Civil Procedure 56(c), a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(c); *see also Anderson*, 477 U.S. at 248; *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir 1996). "[T]he determination of whether a given factual despite requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255. If there is insufficient evidence indicating that a jury could return a favorable verdict for the nonmoving party, then summary judgment is proper. *See Nat'l Geographic Soc'y v. Int'l Media Ass'n, Inc.*, 732 F. Supp. 4, 4 (D.D.C. 1990) (citing *Anderson*, 447 U.S. at 248).

**2.    The Freedom of Information Act**

In the context of FOIA cases, an agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828,

833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)); *see Billington v. Dep't of Justice*, 233 F.3d 581, 583-84 (D.C. Cir. 2000). Notably, in a FOIA case, "the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Burnes v. CIA*, No. 05-242, 2005 WL 3275895, at *2 (D.D.C. Sept. 14, 2005).

For such an affidavit to entitle an agency to summary judgment, the agency "must demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Nation Magazine v. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). The agency "must make a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," *id.*, and the affidavit must "recite[] facts which enable the District Court to satisfy itself that all appropriate files have been searched, *i.e.*, that further searches would be unreasonably burdensome," *Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 151 (D.C. Cir. 1986). Our Circuit Court has noted that "in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

Our Circuit Court has further held that in cases involving matters of national security, "Congress has instructed the courts to accord 'substantial weight' to agency affidavits . . . and these affidavits are equally trustworthy when they aver that all

documents have been produced or are unidentifiable as when they aver that identified documents are exempt." *Goland*, 607 F.2d at 352 (citing Senate reports regarding FOIA provision). Moreover, the Supreme Court has explicitly opined that courts must give great deference to the "decisions of the Director [of the CIA], who must of course be familiar with 'the whole picture,' as judges are not." *CIA v. Sims*, 471 U.S. 159, 179 (1985); *see also Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) ("Judges, moreover, lack the expertise necessary to second-guess such agency decisions in the typical national security FOIA case."). "The test is not whether the court personally agrees in full with the CIA's evaluation of the danger—rather, the issue is whether on the whole record the Agency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility in this field of foreign intelligence in which the CIA is expert and given by Congress a special role." *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982); *see also Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999) ("Mindful that courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns.")

## II.    Defendant Conducted a Reasonable Search

As a threshold matter, plaintiff challenges the adequacy of the defendant's search for records pertaining to his FOIA request. While there is no requirement that an agency search every record system in response to a FOIA request, *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986), an agency must search records systems in which it is likely to find responsive records, *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1999). The agency is entitled to summary judgment on the adequacy of its search if it can

show that it made a "good faith effort to conduct a search . . . using methods which can be reasonably expected to produce the information requested." *Id.* (citing *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

In support of its Motion for Summary Judgment, defendant put forth the declaration of Marilyn A. Dorn, Information Review Officer for the Directorate of Operations ("DO") of the CIA.  Ms. Dorn described in great detail defendant's records system, its procedures for responding to FOIA requests, its production of documents pursuant to the JFK Act, its actions in response to plaintiff's FOIA request, and the bases for the FOIA exemptions exercised by defendant in this action.  With regard to plaintiff's FOIA request in this case, Ms. Dorn stated that:

> [B]ased on the nature of [p]laintiff's FOIA request, CIA officers determined that three directorates might reasonably possess responsive records: the DO, the [Director of CIA Area] (including the Offices of General Counsel, Inspector General, Congressional Affairs, and Public Affairs) and the [Directorate of Support] (including such components as Human Resources and the Security Center.  CIA officers in those directorates were tasked to search for responsive documents.

(Decl. of Marilyn A. Dorn ("Dorn Decl."), attached to Def.'s Mot. Summ. J. as Attach. 2 ¶ 43.)  Defendant further tasked the Office of General Counsel and the Office of Congressional Affairs (successor to the "Office of Legislative Counsel") to search their relevant databases.  (*Id.* ¶ 44.)  Because the CIA's records systems are decentralized and compartmented, each component then devised its own strategy to search for responsive records, (*id.* ¶ 13), and appropriately-trained personnel who regularly conduct FOIA searches searched their directorate's or office's records systems, (*id.* ¶¶ 18-19).  Finally, when records were located, they were reviewed by officers to ensure their responsiveness

to plaintiff's request and prevent the release of classified or other exempt information. (*Id.* ¶¶ 13-30.)   Any responsive documents were then released to plaintiff in full or redacted form.   (*Id.* ¶¶ 39-42.)   Defendant did not reproduce JFK-related documents already publicly available and accessible through NARA.  (*Id.* ¶¶ 30, 44.)

Based on the declaration of Ms. Dorn, and mindful of the deference due agency decisions in this context and that it must accord "substantial weight" to agency affidavits, *see Goland*, 607 F.2d at 352, this Court finds that defendant's search was adequate and that defendant is properly entitled to summary judgment on this issue.

## III.   FOIA Exemptions Invoked by the CIA

The CIA has moved for summary judgment on the grounds that it withheld records that are appropriately exempted from disclosure under FOIA and that it has adequately justified the exemptions it has claimed through the declaration provided by Marilyn A. Dorn, Information Review Officer for the Directorate of Operations of the CIA and the *Vaughn* Index attached to its Motion for Summary Judgment.[1]   Defendant invokes the following seven FOIA exemptions in its index: (1) 5 U.S.C. § 552(b)(1) ("Exemption (b)(1)"); (2) 5 U.S.C. § 552 (b)(2) ("Exemption (b)(2)"); (3) 5 U.S.C. § 552(b)(3) ("Exemption (b)(3)"); (4) 5 U.S.C. § 552 (b)(5) ("Exemption (b)(5)"); (5) 5 U.S.C. § 552(b)(6) ("Exemption (b)(6)"); (6) 5 U.S.C. § 552 (b)(7)(c) ("Exemption (b)(7)(c)"); and (7) 5 U.S.C. § 552(b)(7)(e) ("Exemption (b)(7)(e)").   Plaintiff objects to redactions based

---

[1]      Our Circuit held in *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973), that there is no set form for an index compiled in response to a FOIA request.  However, three important elements are: (1) that the index is one document; (2) the index must adequately describe the withheld documents or deletions; and (3) the index must state the particular FOIA exemption and explain why the exemption applies. *Founding Church of Scientology of Wash., D.C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

on each of these exemptions.  For the following reasons, the Court disagrees with each of the plaintiff's objections, and finds that the defendant's search meets the necessary standard set by our Circuit.

### A.     Exemption (b)(1)

Exemption (b)(1) provides that the disclosure requirements of FOIA do not apply to records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."   5 U.S.C. § 522(b)(1). Exemption (b)(1) thus "establishes a specific exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of that exemption by executive order." *Military Audit Project v. Casey*, 656 F.2d 724, 737 (D.C. Cir. 1981). Defendant indicates that it has exempted a number of documents in reliance on Executive Order No. 12958, 60 Fed. Reg. 19825 (Apr. 17, 1995).  Section 1.5 of Executive Order No. 12985 sets forth seven classification categories for information, and Section 3.2(b) provides that "[i]t is presumed that information that continues to meet the classification requirements under this order requires continued protection." *Id.* at 19827, 19831 (§§ 1.5, 3.2(b)).

Defendant asserts that some of the information that plaintiff seeks falls into at least two of these seven categories: "intelligence activities (including special activities), intelligence sources or methods, or cryptology," *Id* at 19827 (§ 1.5(c)), and "foreign relations or foreign activities of the United States, including confidential sources," *Id.* (§ 1.5(d)). (*See* Dorn Decl. ¶ 48; Def.'s Mot. Summ. J. at 13.)  As explained by Ms. Dorn:

> The withheld information is properly classified as either (i) SECRET pursuant to E.O. 12958 criteria because its disclosure could reasonably be expected to cause serious damage to U.S. national security, or (ii) CONFIDENTIAL pursuant to E.O. 12958 criteria because its disclosure could reasonably be expected to cause damage to U.S. national security.

(Dorn Decl. ¶ 48.) In its *Vaughn* Index, defendant has designated which documents were withheld pursuant to Exemption (b)(1) and has provided the classification level for each document. (*See* Def.'s Mot. Summ. J., Attach. 3 ("Vaughn Index").) For instance, one document exempted under (b)(1) is described as a medical evaluation of Joannides' fitness for overseas duty dated June 8, 1964, and was classified as "Secret" under Executive Order No. 12958 in the interest of national security. (*Id.*)

In this case, the Court finds that defendant has met the deferential standard for applying Exemption (b)(1) by showing that it applied the exemption to matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1386 (D.C. Cir. 1979) (quoting 5 U.S.C. § 552 (b)(1) (1976)).

## B.     Exemption (b)(2)

Exemption (b)(2) exempts from disclosure any information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). In *Schwaner v. Department of Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990), our Circuit established a two-step test for determining whether materials are exempt from disclosure under Exemption (b)(2). "First, the material withheld should fall within the terms of the statutory language." *Id.* (quoting *Founding Church of Scientology*, 721 F.2d at 830 n.4.

If this criterion is satisfied, "the agency may defeat disclosure by proving that either 'disclosure may risk circumvention of agency regulation,'" *id.* (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 369 (1976)), or "the material relates to trivial administrative matters of no genuine public interest," *id.* (citing *Founding Church of Scientology*, 721 F.2d at 830 n.4) (internal quotation marks omitted).

To determine whether the requested information is sufficiently related to the internal concerns of an agency, our Circuit employs a test of "predominant internality." *Id.* at 795 (citing *Crooker v. A.T.F.*, 670 F.2d 1051, 1074 (D.C. Cir. 1981)). As such, to qualify under Exemption (b)(2), information need not actually constitute "rules and practices," but need only be "related" to rules and practices. *Id.* Indeed, "courts have also exempted materials that are so closely related to rules and practices that disclosure could lead to disclosure of the rule or practice itself." *Id.* at 796. Accordingly, our Circuit Court has held that "an agency can delete sensitive notations on documents where they indicated an agency's practices as to their internal routing and distribution." *Id.* (citing *Lesar v. Dep't of Justice*, 636 F.2d 472, 485-86 (D.C. Cir. 1980); *Founding Church of Scientology*, 721 F.2d at 831).

The material exempted by defendant under Exemption (b)(2) clearly satisfies this prong of the test enunciated in *Schwaner*, by withholding materials that include "citation to or discussion of CIA personnel rules and practices (including administrative routing information)." (Dorn Decl. ¶ 51.) Inspection of defendant's *Vaughn* Index belies plaintiff's argument that defendant attempts to exempt materials under Exemption (b)(2) that are not properly within the scope of the exemption. Defendant claims Exemption

(b)(2) to exempt portions of only nine documents, and according to the *Vaughn* Index,

these documents contain, *inter alia*, "[a]gency internal rules and practices," and "internal

Agency personnel practices."  While defendant does exempt material beyond that related

to such internal practices in these nine documents, it does not claim that Exemption (b)(2)

covers all such information.   Rather, defendant cites multiple exemptions, such as

Exemptions (b)(1), (b)(3), (b)(6), and (b)(7)(c) to cover these documents.   Although it

does not specify which exemption pertains to each part of the document being exempted,

such specification is unnecessary, as all exempted portions of these documents described

in the *Vaughn* Index fall within the scope of at least one of the FOIA exemptions cited.[2]

Because defendant has thus satisfied the first portion of the test established in

*Schwaner*, it is necessary to determine if disclosure of the information withheld "may risk

circumvention of agency regulation," *Schwaner*, 898 F.2d at 794 (citing *Rose*, 425 U.S. at

369; *Crooker*, 670 F.2d at 1074), or if "the material relates to trivial administrative

---

[2]      Plaintiff's claim that defendant's exemption of administrative routing information under
Exemption (b)(2) is improper is unavailing.  Although Judge Green of this Court, in an opinion cited by
plaintiff, held that "Exemption Two does not provide a basis for withholding Secret Service identification
markings and numbers," *Fitzgibbon v. Secret Serv.*, 747 F. Supp. 51, 56 (D.D.C. 1990), our Circuit has
expressly held that "an agency can delete sensitive notations on documents where they indicated an
agency's practices as to their internal routing and distribution." *Schwaner*, 898 F.2d at 796 (citing *Lesar*,
636 F.2d at 485-86; *Founding Church of Scientology*, 721 F.2d at 831).  Moreover, our Circuit is not
alone in holding such materials to be exempt. *See e.g.*, *Hale v. Dep't of Justice*, 973 F.2d 894, 902 (10th
Cir. 1992), *vacated on other grounds by* 590 U.S. 918 (1993) (protecting "administrative markings and
notations on documents; . . . FBI employees' identification numbers; a checklist form used to assist
special agents on consensual monitoring; [and] personnel directories containing the names and addresses
of FBI employees"); *Scherer v. Kelley* 584 F.2d 170, 175-76 (7th Cir. 1978) (protecting "file numbers,
initials, signature and mail routing stamps, references to interagency transfers, and data processing
references"); *see also Davis v. Dep't of Justice*, No. 00-2457, slip op. at 8 (D.D.C. Mar. 21, 2003)
(declaring that FBI "[s]ource symbol numbers and source file numbers fall squarely within the scope of
Exemption 2 as 'low 2' exempt information"); *Branch v. FBI*, 658 F. Supp. 204, 208 (D.D.C. 1987)
(establishing that "[t]here is no question that [source symbol and file numbers are] trivial and may be
withheld as a matter of law under Exemption 2").  Accordingly, this Court finds that defendant properly
invoked Exemption (b)(2) to exempt "citation to or discussion of CIA personnel rules and practices
(including administrative routing information)." (Dorn Decl. ¶ 51.)

matters of no genuine public interest," *id.* (citing *Founding Church of Scientology*, 721 F.2d at 830 n.4) (internal quotation marks omitted).[3]  In arguing for disclosure of the materials withheld by defendant under Exemption (b)(2), plaintiff broadly asserts that "the public has an interest in knowing the extent of knowledge and awareness that existed in both the Plans and Intelligence Directorates not only about Lee Oswald's interactions with Cubans and Cuban groups and Cuban operations, but also Cubans, Cuban groups and Cuban operations in general." (Pl.'s Mot. Summ. J. 32.)  Plaintiff further claims that the "JFK Act disclosures contain such 'internal procedures and clerical information' precisely because the House Select Committee on Assassination asked for them when it was investigating the JFK case" (Pl.'s Mot. Summ. J. 32), and that therefore, this information should not be protected from disclosure under Exemption (b)(2).

Plaintiff's arguments in favor of disclosure are unavailing.  Although there may well be a significant public interest in knowing about "Lee Oswald's interactions with Cubans, Cuban groups and Cuban operations in general" (Pl.'s Mot. Summ. J. 32), plaintiff has failed to provide a scintilla of evidence to show how release of information pertaining to purely personnel rules and practices of the CIA, including administrative routing information, would shed light on alleged activities of Mr. Oswald or the CIA's knowledge thereof.  Simply stated, there is no legitimate public interest that would justify disclosure of CIA personnel rules and practices, including administrative routing information.  *See Hale*, 973 F.2d at 902 (finding no public interest in administrative

---

[3]      Because defendant does not contend that disclosure of the information in question could risk circumvention of agency regulation, this reason for nondisclosure is not considered here.

markings and notations, personnel directories containing names and addresses of FBI employees, and employee identification numbers); *see also Germosen v. Cox*, No. 98 Civ. 1294, 1999 WL 1021559, at *12 (S.D.N.Y. Nov. 9, 1999) (finding "no legitimate public interest" in source numbers and agent identification codes); *Buffalo Evening News, Inc. v. Border Patrol*, 791 F. Supp. 386, 390-93 (W.D.N.Y. 1992) (holding that there is no public interest in U.S. Border Patrol internal routing information); *Malizia v. Dep't of Justice*, 519 F. Supp. 338, 344 (S.D.N.Y. 1981) (finding "no legitimate public interest in the FBI's practice of labeling and identifying its sources"). Accordingly, the Court finds that defendant properly withheld information under FOIA Exemption (b)(2).

### C.   Exemption (b)(3)

Exemption (b)(3) exempts from disclosure any matters that are:

> [S]pecifically exempted from disclosure by statute (other than section 552(b) of this title), provided that such statute (A) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). Defendant has withheld documents based on the requirements of three statutes: the National Security Act of 1947, 50 U.S.C. § 403-3(c)(7), which requires the Director of Central Intelligence ("DCI")[4] to protect intelligence sources and methods from unauthorized disclosure; Section 6 of the Central Intelligence Agency Act of 1949 ("CIA Act"), 50 U.S.C. § 403(g), which provides that the CIA shall be exempt from the provision of any other law requiring the publication or disclosure of the organization,

---

[4]   Prior to the enactment of the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. 108-458, 118 Stat. 3638 (2004), the DCI was responsible for the protection of sources and methods under the National Security Act of 1947.

function, names, official titles, salaries, or numbers of personnel employed by the CIA; and 26 U.S.C. § 6103(a), which provides that tax "[r]eturns and return information shall be confidential," and "no officer or employee of the United States . . . shall disclose any tax return or return information obtained by him in any manner in connection with his service." In evaluating withholdings under Exemption (b)(3), the court "do[es] not closely scrutinize the contents of a withheld document; instead, [it] determine[s] only whether there is a relevant statute and whether the document falls within that statute." *Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993).

In *CIA v. Sims*, 471 U.S. 159, 167-68 (1985), the Supreme Court specifically addressed the National Security Act of 1947 in the context of FOIA cases, holding that it is a "withholding" statute for the purposes of exemption (b)(3). As explained by our Circuit Court, the proper standard to determine whether the statue applies to given materials is whether the CIA demonstrates that an answer to the FOIA request can "reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982) (quoting *Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980)).

Importantly, in cases such as this involving national security, as with Exemption (b)(1), courts must "accord 'substantial weight' to agency affidavits . . . when they aver that identified documents are exempt." *Goland*, 607 F.2d at 352 (applying "substantial weight" standard of review to Exemption 3 case); *see Halperin* 629 F.2d at 148 (holding that courts should give "substantial weight" to agency statements in "all national security FOIA cases, whether they arise formally under Exemption 1 or Exemption 3"). As

explained by the Supreme Court in *Sims*, "it is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process," 471 U.S. at 180.

In her declaration, Ms. Dorn states that defendant has invoked Exemption (b)(3) to protect intelligence sources and methods, names and internal information, cryptonyms and pseudonyms, dissemination-control markings, and tax return information. (Dorn Decl. ¶¶ 54-80.) As Ms. Dorn explains, it is necessary for defendant to withhold both explicit and indirect references to intelligence methods, because it is possible for foreign intelligence services to deduce CIA means and methods from even disparate and seemingly unimportant documents in order to defeat CIA intelligence collection efforts. (Dorn Decl. ¶ 64.) As Dorn notes, and as indicated by the *Vaughn* Index, included within the materials withheld pursuant to the National Security Act of 1947 and under the umbrella of Exemption (b)(3) are cryptonyms and pseudonyms, which, if released, could allow the deduction of the identity or nature of the project for which the cryptonyms or pseudonyms stand. (Dorn Decl. ¶ 76; *see, e.g., Vaughn* Index at 5.)

Ms. Dorn also states that defendant withheld CIA employees' names and personal identifiers (such as signatures, employee numbers, and initials), titles, file numbers, and internal organizational data. (Dorn Decl. ¶ 67.) Such information is specifically protected from disclosure by Section 6 of the CIA Act of 1949, which provides that no disclosure of "the organization, functions, names, official titles, salaries, or numbers of

personnel employed by the Agency" is permitted.  50 U.S.C. § 403(g).  Thus, such information is protected from disclosure by FOIA Exemption (b)(3).

Lastly, Ms. Dorn notes that defendant has withheld Mr. Joannides' W-4 tax withholding information.  (Dorn Decl. ¶ 80.)  This is precisely the type of information prohibited from disclosure by 26 U.S.C. § 6103(a).  Accordingly, it falls within the ambit of Exemption (b)(3) and is exempt from disclosure.

For all these reasons, the Court is satisfied that defendant has met the deferential standard for applying Exemption (b)(3) by showing that the materials it has withheld pursuant to this Exemption are "specifically exempted from disclosure by statute" and that such statutes—the National Security Act of 1947, the CIA Act of 1949, and 26 U.S.C. § 6103(a)—"require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establish[] particular criteria for withholding or refers to particular types of matters to be withheld," 5 U.S.C. § 552(b)(3).[5]

## D.    Exemption (b)(5)

Exemption (b)(5) provides that "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency"

---

[5]    Plaintiff's argument that defendant must be compelled to release the information it has withheld under this Exemption is completely devoid of merit.  Plaintiff asserts that "[a]ll of this kind of information has been revealed copiously in records released under the JFK Act pertaining to Cuba, Cuban exiles, Cuban exile organizations, and the CIA officers, employees, assets, and agents who were involved in the CIA's Cuban projects." (Pl.'s Mot. Summ. J. 33.)  As a threshold matter, plaintiff has offered no evidence to show that the information that he seeks from the CIA pursuant to his FOIA request has already been released.  However, even if these materials were previously released under the JFK Act, defendant is under no obligation to produce them pursuant to plaintiff's *FOIA* request.  The law governing FOIA requests, and specifically Exemption (b)(3), is clear, and defendant has properly withheld information pursuant to that law in the instant case.  The Court notes that if any of the materials that plaintiff seeks have been previously released under the JFK Act, nothing in this ruling shall prohibit plaintiff from obtaining, through the proper means, those materials from the National Archives and Records Administration where all records released pursuant to the JFK Act are publicly available.

are exempted from disclosure under the FOIA. 5 U.S.C. § 552(b)(5). This exemption has been construed to apply to documents that would be subject to the attorney-client and work product privileges in the context of civil discovery. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002). The attorney work product privilege protects the mental processes of the attorney. *United States v. Nobles*, 422 U.S. 225, 238 (1975). For this privilege to apply to a document, it must have been created in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 509-511 (1947). The privilege may apply to various types of materials, including interviews, statements, memoranda, correspondence, and briefs. *Id.*

Exemption (b)(5) also covers documents that would fall within the "'deliberative process privilege,'" which protects from disclosure those documents "'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002) (quoting *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992)). Information is exempt only if it is both "predecisional" and "deliberative." *Id.* Documents are "predecisional" if they are "'prepared in order to assist an agency decision-maker in arriving at [a] decision,' rather than to support a decision already made." *Id.* (quoting *Petroleum Info. Corp.*, 976 F.2d at 1433). Documents are "deliberative" if they reflect the "give-and-take of the consultative process." *Id.* This exemption ensures that those in advisory roles are able to express their opinions freely to agency decision-makers without fear that public disclosure would "inhibit frank discussion of policy matters and likely impair the quality

of decisions." *Bureau of Nat'l Affairs, Inc. v. Dep't of Justice*, 742 F.2d 1484, 1497 (D.C. Cir. 1984) (quoting *Ryan v. Dep't of Justice*, 617 F.2d 781, 789-90 (D.C. Cir. 1980)).  As explained by our Circuit Court, the purpose of the "predecisional" or "deliberative process privilege" is:

> to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

As indicated by defendant's *Vaughn* Index, and stated by Ms. Dorn in her declaration, defendant only invoked Exemption (b)(5) to withhold information in two documents. (*See Vaughn* Index at 26, 61; Dorn Decl. ¶ 85.)  With respect to one of the documents for which Exemption (b)(5) was invoked, the *Vaughn* Index specifically describes the information withheld has "recommendations concerning the waiver of certain reinvestigation methods" (*Vaughn* Index at 26), and in the case of the other, notes that the material withheld is "predecisional and deliberative in nature," (*Vaughn* Index at 61).  In both cases, these are precisely the types of materials that the deliberative process privilege, as embodied by FOIA Exemption (b)(5), is designed to protect from disclosure. Accordingly, this Court finds that defendant properly invoked Exemption (b)(5) to shield these materials from disclosure.

### E.      Exemption (b)(6)

Exemption (b)(6) provides that "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" may be exempted from disclosure under the FOIA.  5 U.S.C. § 552(b)(6).  With regard to the meaning of the term "similar files," the Supreme Court has stated that Exemption (b)(6) was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 89-1497 (1966) *reprinted in* 1966 U.S.C.C.A.N. 2418).  To properly invoke Exemption (b)(6), the agency must show that the information applies to a particular individual and is thus personal in nature. *N.Y. Times Co. v. NASA*, 852 F.2d 602, 606 (D.C. Cir. 1988).  The Court must strike a proper "balance between the protection of an individual's right to privacy and the preservation of the public's right to Government information . . . ." *Wash. Post Co.*, 456 U.S. at 599 (quoting H.R. Rep. No. 89-1497); *Hornbostel v. Dep't of the Interior*, 305 F. Supp. 2d 21, 34 (D.D.C. 2003) (quoting *Wash. Post Co.*, 456 U.S. at 599).   The analysis of the "public interest" necessarily focuses on the core purpose for which the FOIA was enacted, that is, to "shed[] light on an agency's performance of its statutory duties . . . ." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).  Accordingly, if a document invades a third party's privacy and does not contain "official information" shedding light on government functions, it may be withheld under Exemption (b)(6). *Id.* at 774.

In the instant case, defendant invokes Exemption (b)(6) to withhold names, medical histories, biographical information and initials of CIA employees and members of their families, and other identifying information about CIA employees and third parties on the ground that disclosure of this information would constitute an unwarranted invasion of privacy. (Dorn. Decl. ¶¶ 86-89.)   As defendant correctly notes, this information is clearly personnel information, medical information, or information that can "be identified as applying to [a particular] individual," *Wash. Post Co.*, 456 U.S. at 602, (quoting H.R. Rep. No. 89-1497), and therefore satisfies the threshold requirement for withholding under FOIA Exemption (b)(6). (Def.'s Mot. Summ. J. at 22.)

Because defendant has satisfied this threshold requirement, this Court must balance the competing needs of individuals' rights to privacy and the public's right to government information. *See Wash. Post Co.*, 456 U.S. at 599.   In weighing these interests, it is important to note that our Circuit Court has recognized a significant privacy interest in the unlimited disclosure of one's name or other information that identifies an individual. *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991); *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989). Indeed, Judge Lamberth of this Court has found similar biographical data to be the type of information protected by Exemption (b)(6), *Judicial Watch, Inc. v. Dep't of Commerce*, 83 F. Supp. 2d 105, 112 (D.D.C. 1999), because, in essence, "there is a substantial probability that disclosure will cause an interference with personal privacy," *Horner*, 879 F.2d at 878.   As defendant rightly notes, plaintiff has not demonstrated any legitimate public interest in the release of the personnel information that defendant has sought to withhold under Exemption (b)(6).

22

(Def.'s Mot. Summ. J. at 22; Dorn Decl. ¶ 88.) Rather, in his July 4, 2003 FOIA request, plaintiff merely asserts generally that the materials he seeks, in total, are "of great public interest [because] [t]hey shed new light on the assassination of President Kennedy." (Morley Letter at 3.) Plaintiff further fails to suggest in his Motion for Summary Judgment and in his Opposition to Defendant's Motion for Summary Judgment how there is a public interest in the release of the personnel information defendant has sought to withhold under Exemption (b)(6). (*See* Pl.'s Mot. Summ. J. at 38-42.) Instead, plaintiff seems to rest his case on his contentions that defendant has failed to demonstrate a substantial privacy interest that justifies its withholdings. (*See* Pl.'s Mot. Summ. J. at 41.)

　　Plaintiff's arguments that defendant has failed to demonstrate a substantial privacy interest that justifies its withholdings are unavailing. In advancing this argument, plaintiff points to four documents listed in the *Vaughn* Index. With respect to *Vaughn* documents 28 and 29, plaintiff argues that because Mr. Joannides is deceased, there is no privacy interest at stake because Joannides' privacy interest does not survive his death. (*See* Pl.'s Mot. Summ. J. at 41.) Similarly, plaintiff contends that because Mr. Joannides' wife and mother are also deceased, there is no privacy interest at stake concerning information about them. (*Id.*) While it may be true that after death a person no longer possesses privacy rights, *see Diamond v. FBI*, 532 F. Supp. 216, 227 (S.D.N.Y. 1981), the fact that "the right to recovery for invasion of privacy lapses upon [a] person's death does not mean that the government must disclose inherently private information as soon as [an] individual dies." *Kiraly v. FBI*, 728 F.2d 273, 277 (6th Cir. 1984) (5 U.S.C. § 522(b)(7)(c)). Thus, the fact that Mr. Joannides and his wife and mother are

now deceased does not mean that defendant must disclose inherently private information about them.[6]

Plaintiff also specifically challenges defendant's invocation of Exemption (b)(6) to withhold information from *Vaughn* document 52. (Pl.'s Mot. Summ. J. at 42.) Defendant has withheld from this document—which was partially released to plaintiff—"a third-party organization's affiliation with Joannides [and] Joannides' personal financial information" pursuant to Exemption (b)(6). (*Vaughn* Index at 52.) While plaintiff is correct that "corporations, businesses and partnerships have no privacy interest whatsoever under Exemption 6" (Pl.'s Mot. Summ. J. at 42 (quoting *Wash. Post Co. v. Dep't of Agriculture*, 943 F. Supp. 31, 37 n.6 (D.D.C. 1996))), such information may nonetheless be withheld because it constitutes an unwarranted invasion of the privacy of Mr. Joannides and his surviving family members.[7]

---

[6]      This information may also be withheld appropriately because "particularly sensitive personal information pertaining to a deceased person may well threaten the privacy interests of surviving family members or other close associates." Office of Information & Privacy, Dep't of Justice, *FOIA Update*, Vol. III, No. 4 (1982), *available at* http://www.usdoj.gov/oip/foia_updates/Vol_III_4/page7.htm (citing *Lesar v. Dep't of Justice*, 636 F.2d 472, 486-88 (D.C. Cir. 1980)). The Supreme Court has recognized that "the concept of personal privacy . . . is not some limited or 'cramped notion.'" *Nat'l Archives & Records Admin. v. Flavish*, 541 U.S. 157, 165 (2004) (internal quotation marks omitted) (discussing privacy in the context of FOIA Exemption (b)(7)(c)). As explained by the Court, "[t]he right to personal privacy is not confined . . . to the 'right to control information about oneself' . . . . To say that the concept of personal privacy must 'encompass' the individual's control of information about himself does not mean it cannot encompass other personal privacy interests as well." *Id.* (rejecting the contention that "the individual who is the subject of the information is the only one with a privacy interest"). Thus, while Mr. Joannides may be deceased, defendant's withholding, under Exemption (b)(6), of the information sought by plaintiff may alternately be justified on this ground.

[7]      Lastly, plaintiff challenges defendant's redaction of information from *Vaughn* document 35 because defendant "states only that disclosure would result in 'an unwarranted invasion of personal privacy,' not the '*clearly* unwarranted invasion' required for an Exemption 6 showing." (Pl.'s Mot. Summ. J. at 42 (quoting *Vaughn* Index at 35) (emphasis added).) This semantic argument is wholly devoid of merit, and the Court rejects it as such.

Accordingly, this Court finds that the privacy interests cited by defendant, and the privacy intrusion associated with disclosing the information withheld, clearly outweighs the value of public disclosure of this information. Thus, this Court finds that defendant properly withheld this information under Exemption (b)(6).

## F.   Exemption (b)(7)(c)

Exemption(b)(7)(c) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(c).  For records to constitute records "compiled for law enforcement purposes," and thus qualify for exemption under Exemption (b)(7)(c), the records must meet two criteria: (1) the activity that gave rise to the documents must be related to enforcement of federal laws or maintenance of national security; and (2) the nexus between the activity and "one of the agency's law enforcement duties must be based on information sufficient to support at least a 'colorable claim' of rationality." *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1982); *Keys v. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987). In asserting this exemption, an agency is required to balance the nature of the privacy interest with the public interest in disclosure. *Albuquerque Publ'g Co. v. Dep't of Justice*, 726 F. Supp. 851, 855 (D.D.C. 1989).  In this regard, our Circuit Court has stated that "'Exemption 7(c) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity.'" *Computer Prof'ls for Soc. Responsibility v. Secret Serv.*, 72 F.3d 897, 904

(D.C. Cir. 1996) (quoting *Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990)).  Our Circuit Court also has found that there is a considerable stigma inherent in being associated with law enforcement proceedings, and therefore, courts should not "require a balance tilted emphatically in favor of disclosure" when weighing the privacy interest against the public interest in disclosure.  *Bast v. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981).

Defendant invoked Exemption (b)(7)(c) to withhold information from only nine documents.  According to Ms. Dorn, defendant invoked this Exemption to withhold:

> investigatory records concerning George Joannides' security clearances and background investigations [because] [a]s part of Joannides' clearance and investigatory process, CIA obtained personal and biographical information from Joannides and third parties (including family members and CIA employees), the disclosure of which could reasonably be expected to constitute an unwarranted invasion of their personal property.

(Dorn Decl. ¶ 91.)  Notwithstanding plaintiff's argument that defendant's justification for withholding this information—that disclosure "could reasonably be expected to constitute an unwarranted invasion of their personal privacy"—is conclusory, this Court is satisfied that defendant properly invoked Exemption (b)(7)(c).  The documents at issue, which are the product of a CIA investigatory process, were clearly "compiled for law enforcement purposes," *see Pratt*, 673 F.2d at 421, and there is a clear nexus between the investigatory process and the CIA's law enforcement duties.  Thus, this Court must balance the privacy interest against the public interest in disclosure.  With regard to the documents withheld pursuant to Exemption (b)(6), plaintiff fails to explain any public interest *specifically in the materials withheld under this Exemption*.  While plaintiff, in his FOIA request, claims

that there is a public interest in the materials he seeks generally (*see* Morley Letter at 3),
he fails to establish that there is a public interest in the personal information claimed to be
exempt here. Accordingly, because our Circuit Court has found a considerable stigma
inherent in being associated with law enforcement proceedings, disclosure of the
documents withheld pursuant to this Exemption could release information about CIA
employees and other third-parties, and plaintiff has failed to demonstrate a public interest
in this information sufficient to outweigh the privacy concerns implicated, this Court
finds that defendant properly withheld this information pursuant to Exemption (b)(7)(c).[8]

### G.     Exemption (b)(7)(e)

Exemption (b)(7)(e) provides for the withholding of:

> records or information compiled for law enforcement purposes, but only to
> the extent that the production of such law enforcement records or
> information . . . would disclose techniques and procedures for law
> enforcement investigations or prosecutions, or would disclose guidelines for
> law enforcement investigations or prosecutions if such disclosure could
> reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(e). To properly invoke Exemption (b)(7)(e), an agency must show
that the requested materials were compiled "for law enforcement purposes" and that
disclosure of the materials would cause the harm that Exemption (b)(7)(e) is designed to
prevent. *Perrone v. FBI*, 908 F. Supp. 24, 28 (D.D.C. 1995); *Cowsen-El v. Dep't of
Justice*, 826 F. Supp. 532, 533 (D.D.C. 1992).

---

[8]     Plaintiff alleges that there is no privacy interest at stake here that is sufficient to tip the balance in
favor of nondisclosure because Mr. Joannides, his wife, and his mother are deceased. (*See* Pl.'s Mot.
Summ. J. at 41.) Investigatory records concerning Mr. Joannides, however, will necessarily contain
information about the people who participated and cooperated in the investigation, and therefore, they
have a fundamental privacy interest at stake in this matter which this Court must also protect.

27

As noted above, *supra* Part III.F, "law enforcement purpose" includes national security-related government activities. *See Pratt*, 673 F.2d at 420-21. This protection from disclosure further extends to civil investigations and proceedings. *Mittleman v. Office of Pers. Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996); *see Pratt*, 673 F.2d at 420 n.32. As noted by Judge Friedman of this Court, "Exemption 7(e) provides categorical protection to information related to law enforcement techniques." *Smith v. ATF*, 977 F. Supp. 496, 501 (D.D.C. 1997) (citing *Fisher v. Dep't of Justice*, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991), *aff'd* 968 F.2d 92 (D.C. Cir. 1992)). Thus, as defendant notes in its Motion, "[w]hile Exemption 7(e)'s protection is generally limited to techniques or procedures that are not well known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness." (Def.'s Mot. Summ. J. at 25-26 (citing *Coleman v. FBI*, 13 F. Supp. 2d 75, 83 (D.D.C. 1998) ("applying Exemption (b)(7)(e) to behavioral science analysis and details of polygraph examination"); *Perrone v. FBI*, 908 F. Supp. 24, 28 (D.D.C. 1995) (applying this Exemption to the type of polygraph test, type of machine used, questions asked and sequence of questions)).) Indeed, in some cases it may not even be possible for an agency to describe its law enforcement techniques in general terms without disclosing the very information it seeks to protect. *Smith*, 977 F. Supp. at 501 (citing *Nat'l Sec. Archive v. FBI*, 759 F. Supp. 872, 885 (D.D.C. 1991)).

In the instant case, defendant invoked Exemption (b)(7)(e) to withhold information from fifteen documents "containing information on George Joannides' security clearances and background investigations." (Dorn Decl. ¶ 95.) As stated by Ms. Dorn, "[t]he

information that has been withheld could reasonably be expected to provide insight into CIA Security Center's clearance and investigatory processes, as well as certain techniques and procedures used by law enforcement agencies in coordination with CIA during those processes." (Dorn Decl. ¶ 95.) This is precisely the type of information that Exemption (b)(7)(e) is meant to exempt from disclosure, as it is reasonable that disclosure of CIA security clearance and investigatory processes would risk circumvention of those processes in the future. Plaintiff's sole argument against defendant's invocation of this Exemption is that defendant "makes no representation that the techniques involved are 'generally unknown to the public.'" (Pl.'s Mot. Summ. J. at 45.) As noted above, however, this is not a requirement for exemption. Accordingly, this Court finds that defendant properly withheld materials pursuant to Exemption (b)(7)(e).

## CONCLUSION

For the foregoing reasons, this Court GRANTS defendant's Motion for Summary Judgment and DENIES plaintiff's Motion for Summary Judgment. An appropriate Order will issue with this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

29