UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JEFFERSON MORLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 03-2545 (RJL) |
| v. | ) | |
| | ) | |
| UNITED STATES CENTRAL | ) | |
| INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION
(December **14**, 2011) [#107]

Plaintiff, Jefferson Morley, moves for an award of attorney's fees and costs

against the Central Intelligence Agency ("CIA" or "Agency") under 5 U.S.C. §

552(a)(4)(E) of the Freedom of Information Act ("FOIA").  After careful review of this

motion, the applicable law, and the entire record herein, plaintiff's motion is DENIED.

## BACKGROUND

The facts of Morley's case are detailed in prior opinions of this Court and our

Court of Appeals.  *See generally Morley v. CIA,* 699 F. Supp. 2d 244 (D.D.C. 2010)

("*Morley II*"); *Morley v. CIA*, 453 F. Supp. 2d 137 (D.D.C. 2006) ("*Morley I*"), *aff'd in*

*part, rev'd in part*, 508 F.3d 1108 (D.C. Cir. 2007) ("*Morley*").  Accordingly, I will

summarize only those facts that directly bear on Morley's motion for attorney's fees.

Plaintiff is a journalist, author, and news editor who has written about President

John F. Kennedy's assassination.  *See Morley*, 508 F.3d at 1113.  On July 4, 2003, he

requested from the CIA, through FOIA, "all records pertaining to CIA operations officer

1

George Efythron Joannides . . . including, but not limited to" seventeen specific categories of records. Compl. Ex. 1 ("Morley Letter") 1-3 [Dkt. # 1-1]. Morley's interest in Joannides stems from his belief that the former CIA officer was "uniquely well-positioned to observe and report" on the Kennedy assassination. Morley Letter 3.

The CIA initially responded to Morley's request by directing him to records relating to the Kennedy assassination that the CIA had transferred to the National Archives and Records Administration ("NARA"). *See Morley*, 508 F.3d at 1113. After further review, the CIA reconsidered its position and, in several productions in 2004 and 2005, sent Morley 3 complete documents, 2 documents in segregable form, and 113 redacted documents. *See id.* at 1114.[1]

Based on these document searches and productions, this Court granted summary judgment in the Agency's favor. *See Morley I*, 453 F. Supp. 2d at 144-57. On review, our Circuit Court affirmed in part and reversed in part. *See Morley*, 508 F.3d at 1113, 1129. Specifically, the Court of Appeals remanded the case for the CIA to: (1) search its operational files, which it had not done previously, *id.* at 1116-19; (2) search the records it transferred to NARA, *id.* at 1119-20; (3) supplement its explanation regarding certain monthly reports, which Morley believes should have been filed by Joannides, *id.* at 1120-21; (4) provide additional details describing the scope of its search, *id.* at 1121-22; (5) explain to this Court's satisfaction why the withheld information was not segregable, *id.*

---

[1]     The CIA justified these redactions and its withholding of other material under various FOIA Exemptions including Exemptions 1, 2, 3, 5, 6, 7(C), 7(D), and 7(E). *Id.* It also issued a *Glomar* response, whereby it declined to confirm or deny the existence of certain records requested by Morley. *See id.*

at 1123; (6) substantiate its *Glomar* response, *id.* at 1126; and (7) provide additional justification for withholding documents under FOIA exemptions 2, 5, and 6, *id.* at 1124-28. Simultaneously, our Circuit affirmed this Court's decision concerning the CIA's use of FOIA to respond to Morley's document request, the adequacy of the CIA's *Vaughn* index, and the CIA's withholding of material under FOIA Exemptions 1, 3, and 7(3). *Id.* at 1129.

In response to our Circuit's decision, the CIA in 2008 conducted additional searches and produced additional material to Morley. In particular, on April 28, 2008, the CIA released 113 responsive records from the files it previously transferred to NARA, and on August 6, 2008, another 293 responsive records from the CIA's files. Pl.'s Mem. P&A Supp. Pl.'s Mot. Award Att'y's Fees & Costs ("Pl.'s Mem.") 6 [Dkt. # 107]. The CIA then filed a renewed motion for summary judgment. Def.'s Renewed Mot. Summ. J. [Dkt. #88]. Finding that the CIA conducted adequate searches and properly justified its withholdings under applicable FOIA exemptions, this Court granted the CIA's motion. *Morley II,* 699 F. Supp. 2d at 258. Morley now moves this Court for an award of attorney's fees and costs. Pl.'s Mot. Award Att'y's Fees & Costs ("Pl.'s Mot.") 1 [Dkt. #107]. The CIA opposes this motion. Def.'s Opp'n Pl.'s Mot. Att'y's Fees & Costs ("Opp'n") [Dkt. #109].

## ANALYSIS

### A. Legal Standard

Under FOIA, a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which

the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). To obtain this award, a plaintiff must make two separate showings: (1) he is *eligible* for an award of attorney's fees and (2) he is *entitled* to that award. *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984).

First, to be eligible for attorney's fees, a plaintiff must have "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Next, and equally necessary, the plaintiff must also show the court that he is entitled to such an award. *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992), *superseded by statute on other grounds,* OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524. In determining whether a FOIA litigant is entitled to fees, a court must consider the following four, nonexhaustive factors: "1) the public benefit derived from the case; 2) the commercial benefit to the plaintiff; 3) the nature of the plaintiff's interest in the records; and 4) whether the government has a reasonable basis for withholding the requested information." *Cotton v. Heyman*, 63 F.3d 1115, 1117 (D.C. Cir. 1995) (internal citation omitted). But, there is no "presumption in favor of awarding attorney fees" to prevailing FOIA litigants," and "the legislative history of section 552(a)(4)(E) evinces a clear congressional intent to leave the courts' broad discretion when considering a request for attorney fees." *Nationwide Bldg. Maintenance, Inc. v. Sampson,* 559 F.2d 704, 713-14 (D.C. Cir. 1977); *see also Tax Analysts*, 965 F.2d at 1094 ("The sifting of those criteria over the facts of a case is a matter of district court discretion . . . .") (internal citation omitted).

**B. Plaintiff Is Not Entitled to an Award of Attorney's Fees and Costs.**

Morley contends that he is both eligible and entitled to an award of attorney's fees

under FOIA.  Pl.'s Mem. 8, 10.  The CIA does not contest whether Morley is eligible to

receive attorney's fees; instead, the Agency argues that Morley has failed to show that he

is *entitled* to attorney's fees under any of the four factors.  Opp'n 2.  For the following

reasons, I agree with the CIA and conclude that Morley is not *entitled* to an award of

attorney's fees in this case.[2]

**1.  Public Benefit**

The public benefit factor "speaks for an award of attorney's fees when the

complainant's victory is likely to add to the fund of information that citizens may use in

making vital political choices." *Cotton*, 63 F.3d at 1120 (quoting *Fenster v. Brown*, 617

F.2d 740, 744 (D.C. Cir. 1979).  Relevant considerations for this factor include the

---

[2]     Because I agree with the CIA that Morley is not entitled to attorney's fees, I need
not, and will not, analyze whether Morley is also eligible for an award.  Although the
CIA does not directly contest Morley's eligibility, the parties are not in agreement on the
governing standard for whether a plaintiff has substantially prevailed.  Plaintiff contends
that, because this Court's final ruling followed the enactment of the OPEN Government
Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, amending 5 U.S.C. § 552(a)(4)(E), that
statute applies to this case.  Pl.'s Mem. 8-10.  Under that statute's language, a plaintiff
substantially prevails "if the complainant has obtained relief through either—(I) a judicial
order, or an enforceable written agreement or consent decree; or (II) a voluntary or
unilateral change in position by the agency, if the complainant's claim is not
insubstantial." §552(a)(4)(E)(ii).  Defendant states that because Morley filed his case
prior to this statute's enactment, this Court may not apply the statute retroactively and is
bound to apply *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human
Res.*, 532 U.S. 598 (2001).  Opp'n 7-9.  Prior to the OPEN Government Act's enactment,
*Buckhannon* controlled attorney's fee eligibility.  *Buckhannon* held that "enforceable
judgments on the merits and court-ordered consent decrees create the 'material alteration
of the legal relationship of the parties' necessary to permit an award of attorney's fees."
532 U.S. at 604 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S.
782, 792-93 (1989)).

disclosure's "likely degree of dissemination and the public impact that can be expected," *Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Protection*, No. 04-377, 2006 WL 3060012 at *4 (D.D.C. Oct. 26, 2006) (internal citation and quotations omitted), and the extent to which the information is already publically available, *Tax Analysts*, 965 F.2d at 1094. As such, the public benefit should be measured by the "the specific documents at issue in the case at hand." *Cotton*, 63 F.3d at 1120.

Morley contends that "[a]s an author and journalist, [he] is in the favored class of requesters who 'ordinarily' would be awarded attorney's fees." Pl.'s Mem. 11. And, indeed, Morley requested documents regarding Joannides to gain information about the Kennedy assassination. *Id.* at 11-12; *see also* Morley Letter 3. While the Kennedy assassination is surely a matter of public interest, *see Weisberg*, 543 F.2d at 311, this litigation has yielded little, if any, public *benefit*—certainly an insufficient amount to support an award of attorney's fees.

Here, in response to our Circuit's decision, the CIA in 2008 conducted additional searches and produced to Morley 113 documents from the set of documents previously transferred to NARA ("Kennedy-assassination documents") and 293 documents from the CIA's operational files related to Joannides's personnel records. Pl.'s Mem. 5-6; Opp'n 5-6. Morley appears to claim that the public benefit primarily derives from the Kennedy-assassination documents. *See* Pl.'s Reply Def.'s Opp'n ("Reply") 4-6 , 8-9 [Dkt. #112-

1]; Pl.'s Resp. Def.'s Surreply ("Pl.'s Resp.") 2-5 [Dkt. #119].[3]  This litigation did not,

however, lead to the publication of the Kennedy-assassination documents.

Instead, the Kennedy-assassination documents obtained by Morley through this

FOIA litigation are *identical* to the documents which were previously released under the

President John F. Kennedy Assassination Records Act of 1992 ("JFK Act") to NARA

and were already in the public domain.  Decl. of D. Nelson ("Nelson Decl.") ¶ 42, Nov.

21, 2008 [Dkt. #89]; Pl.'s Reply 9 ("The copies of the CIA records regarding Joannides

referred to NARA were released to Morley as official JFK Act Releases with this status

and the date of the release noted on the face of the document.").  As such, Morley cannot

claim that any of this information "add[s] to the fund of information that citizens may use

in making vital political choices." *Cotton*, 63 F.3d at 1120.[4]  Indeed, Morley admits as

much in this case when, referencing a document marked "JFK Act Release," Pl. Ex. 1

[Dkt. # 112-2], he states: "Through Morley's use of this and other CIA materials *he*

---

[3]    In his initial motion, Morley did not attempt to show that the specific documents
disclosed through this litigation conferred a public benefit. *See* Pl.'s Mem. 11-12.
Instead, Morley initially relied only on his own unsupported assertion that "[t]here is no
reason why he should be removed from the class of requesters who are ordinarily
awarded fees" and the general fact that information related to the Kennedy assassination
concerns the public interest. *Id.*

[4]    In a declaration filed with his reply brief, Morley claims that "this case has yielded
a trove of revelations that have intrigued news editors, JFK scholar [sic], and the reading
public." Morley Decl. ¶ 4, July 19, 2010 [Dkt. #112-4].  Morley then describes news
coverage concerning this litigation, including some articles he authored. *Id.* at 2-4; Pl.'s
Reply 4-5.  But, he fails to explain how any of this information is distinguishable from
that already available at NARA.

*obtained from NARA*, he enriched public understanding of such matters." Pl.'s Reply 9 (emphasis added).[5]

Morley tries to circumvent this problem by arguing that "NARA normally requires the requester to do the search and imposes exorbitant copying charges." Pl.'s Reply 8. But, Morley's using FOIA to sidestep these copying costs and to compel the CIA to search these records did not exactly further the public benefit. *See Chesapeake Bay Found., Inc. v. Dep't of Agric.*, 108 F.3d 375, 377 (D.C. Cir. 1997) ("[T]hat the Foundation did not have to pay for postage under the [court's order] is hardly a significant public benefit. Nor is the establishment of a legal right to information a public benefit . . . ."). Indeed, prior to filing this case, "the public had the benefit of access to all or most of this information . . . ." *Tax Analysts*, 965 F.2d at 1094 (internal citation and quotation omitted). Accordingly, considering that Morley has already himself benefitted by avoiding the copying costs, this Court does not view a further award of attorney's fees as appropriate in this case.

---

[5]     Morley cites to several, non-binding cases related to FOIA fee-waivers for the proposition that prior disclosure does not necessarily preclude documents' providing a public benefit. Pl.'s Reply 10-11. Those cases, however, involved disclosures to other FOIA requesters, *see Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994); *Schrecker v. Dep't of Justice*, 970 F. Supp. 49, 51 (D.D.C. 1997), and publications in agency's reading rooms, *see Friends of the Coast Fork v. U.S. Dep't of Interior*, 110 F.3d 53, 55 (9th Cir. 1997); *Fitzgibbon v. Agency for Int'l Dev.*, 724 F. Supp. 1048, 1051 (D.D.C. 1989). Those limited disclosures are materially distinguishable from the situation here where documents were transferred to a designated place for public review—NARA. *See* President John F. Kennedy Assassination Records Collection Act of 1992, Pub. L. No. 102-526, § 4, 106 Stat. 3443-58 ("All assassination records transmitted to the National Archives for disclosure to the public shall be included in the Collection and shall be available to the public for inspection and copying at the National Archives . . . .").

Even if the majority of documents Morley received had not been previously public, Morley's claims about the supposed public benefit of the documents produced in this litigation are unconvincing as based on nothing more than his own conclusory opinions and factually inaccurate statements. For instance, Morley claims that his "suit prompted the CIA to acknowledge for the first time that Joannides was acting in an official and deceptive capacity" in his role with the House of Representatives Select Committee on Assassinations. Pl.'s Reply 6 (quoting Morley Decl. ¶ 4(b), July 19, 2010). But, the CIA had previously acknowledged this fact when it released records under the JFK Act. Nelson Decl. ¶¶ 16, 59-60. Morley also argues that his lawsuit forced the CIA to disclose that Joannides received a "medal for his work in 1963 and 1978," Pl.'s Reply 7; Pl.'s Resp. 5-6; Morley Decl. ¶ 4(c), July 19, 2010. But, Morley overstates this medal's importance to his case as in fact this was a "Career Intelligence Medal" awarded for Joannides's 28 years of service from *1950 to 1978*. Morley Decl., Oct. 24, 2010, Attach. 2 [Dkt. # 119-1].[6] Finally, Morley makes one more argument, which actually undermines his claim that this case has conferred a public benefit.

Morley claims that this Court should award attorney's fees based on documents *withheld* by the CIA. *See* Pl.'s Reply 7 ("[T]he lawsuit has made it clear that the CIA retains a significant body of JFK assassination-related records that it has not reviewed

---

[6]     Morley makes a similarly unfounded claim that Joannides's traveling to New Orleans twice during the same period that Warren Commission investigators were conducting interviews in New Orleans is "unquestionably new information of interest to scholars of the assassination and to the general public." Pl.'s Resp. 4 (quoting Morley Decl. ¶ 2, Oct. 24, 2010 [Dkt. # 119-1]).

and released as mandated by the JFK Records Act."); Pl.'s Resp. 4-5. But those documents were properly withheld under FOIA, *see Morley II,* 699 F. Supp. 2d at 252-59, and therefore, his argument must fail. Even so, the CIA has stated that most of these records are completely unrelated to the Kennedy assassination. *See* Nelson Decl. ¶ 55.[7] Accordingly, the public benefit factor weighs strongly in the CIA's favor.

## 2. Plaintiff's Commercial Benefit and the Nature of Plaintiff's Interest

The second and third factors, the plaintiff's commercial benefit and the nature of plaintiff's interest, "are closely related and often considered together." *Tax Analysts,* 965 F.2d at 1095. As our Circuit Court instructed in *Davy v. CIA,* 550 F.3d. 1155 (D.C. Cir. 2008), these factors are intended to assess whether a plaintiff has "sufficient private incentive to seek disclosure" recognizing that "many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." *Id.* at 1158, 1160 (internal citations and quotations omitted). But, "when a litigant seeks disclosure for a commercial benefit or out of personal motives, an award of attorney's fees is generally inappropriate." *Tax Analysts,* 965 F.2d at 1095. (internal citations and quotations omitted).

---

[7]     Morley, nevertheless, maintains that these records are related to the Kennedy assassination and should have been released under the JFK Act. In his Response to the Defendant's Surreply, Morley, referencing the 295 documents withheld by the CIA under FOIA, states: "according to Judge John Tunheim, they meet the *legal criteria* of JFK-assassination-related records." Pl.'s Resp. 5 (emphasis added). Morley apparently bases this statement on a quote in a newspaper article, from Judge Tunheim, the former chairman of the Assassination Records Review Board, in which Judge Tunheim states: "This material should be released." *See* Scott Shane, *C.I.A. Is Still Cagey About Oswald Mystery,* N.Y. Times, Oct. 17, 2009. This Court finds Morley's argument to be not only unpersuasive, but also misguided.

Morley asserts that these factors favor a fee award because (1) any commercial benefit he received should not disqualify him from an award because he "belongs to the category of requesters favored to receive both fee waivers and attorney's fees" and (2) his interest "fits in the scholarly-journalistic category." Pl.'s Mem. 13-17.  Morley admits that he received "minimal" compensation for writing news articles about this matter but has "no book contract."  Morley Decl. ¶ 6, July 19, 2010.  But, Morley claims that he is "interested in historical truth."  *Id.*  ¶ 7.  Although Morley is correct, to the extent that these points by themselves would not preclude him from receiving attorney's fees, it certainly cannot be said that Morley's whole purpose was "to increase the public fund of knowledge about a matter of public concern."  *Davy*, 550 F.3d at 1162.

Rather, as the CIA correctly points out, Morley had an interest in obtaining the NARA records "from the CIA at little or no charge under FOIA" to avoid expending his own time and money to obtain the documents from NARA.  Opp'n 16; *cf.* Pl.'s Reply 8 ("NARA normally requires the requester to do the search and imposes exorbitant copying charges.").  I find, therefore, that these two factors indicate that Morley has a sufficient private interest in pursuing these records without attorney's fees.  *See* 550 F.3d at 1160.

### 3.  Reasonableness of CIA's Original Withholding

Because the CIA has advanced reasonable legal positions, this Court concludes that the fourth factor also weighs against an award of attorney's fees.  The final factor considers whether the government had a reasonable or colorable basis for withholding documents and whether the government was recalcitrant or obdurate in opposing a valid claim.  *Id.* at 1162.  Although none of the factors is solely dispositive, the "failure to

satisfy the fourth element . . . may foreclose a claim for attorney's fees or costs."
*Mayadak v. U.S. Dep't of Justice*, 579 F. Supp. 2d 105, 108-09 (D.D.C. 2008) (internal
citations and quotations omitted).

Morley contends that the CIA engaged in "dilatory tactics" in its initial response to
Morley's FOIA request and then continued with "delaying tactics" by asserting its
*Glomar* response and litigating whether its operational records were exempt from FOIA.
Pl.'s Mem. 16-17; Pl.'s Reply 15-18.  I disagree.

The CIA has not only relied on reasonable legal interpretations but also acted
reasonably throughout this case.  First, in response to Morley's FOIA request letter
seeking materials to "shed new light on the assassination of President Kennedy," Morley
Letter 3, the CIA directed Morley to the logical repository of such records—NARA.
Second, the CIA was certainly reasonable in its assertion of a *Glomar* response
concerning Joannides's participation in covert operations: after the CIA expanded its
explanation for making the *Glomar* response at our Circuit Court's instruction, this Court
found that explanation adequate. *Morley II,* 699 F. Supp. 2d at 257-58.  Further, the CIA
had a reasonable legal basis for initially contesting Morley's request to search its
operational files.  Although our Circuit eventually ruled against the CIA on this point, the
court noted that the CIA relied on the "only opinion by a circuit court of appeals" to
address the relevant FOIA exemption under the CIA Act, 50 U.S.C. § 431. *Morley*, 508
F.3d at 1118.  Finally, there is no indication in the record that the CIA has engaged in any
recalcitrant or obdurate behavior. *Cf. Davy*, 550 F.3d at 1163 (holding that fourth factor
weighed against agency where agency took more than one year to process documents and

provided no legal basis in response to a second FOIA request).  In sum, this factor also weighs strongly in favor of the CIA.

## CONCLUSION

For all these reasons, the Court concludes that the plaintiff is not entitled to attorney's fees.[8]  Thus, plaintiff's motion must, and will be, DENIED.  An appropriate Order will issue with this Memorandum herewith.

RICHARD J. LEON
United States District Judge

---

[8]      Because Morley is not entitled to fees, there is no need for this Court to assess whether Morley's attorney's fee request is reasonable.