UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFERSON MORLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03-cv-2545 (RJL) |
| ) | |
| CENTRAL INTELLIGENCE AGENCY, ) | |
| ) | |
| Defendant. ) | |

**FILED**
**JUL 23 2014**
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

MEMORANDUM OPINION
(July 23, 2014) [Dkt. #135]

Plaintiff Jefferson Morley brings this action to recover attorney's fees and costs from the Central Intelligence Agency ("CIA") under the Freedom of Information Act ("FOIA"). *See* Pl.'s Renewed Mot. for Att'y's Fees and Costs [Dkt. #135] ("Pl.'s Mot."). The CIA opposes. Def.'s Opp'n to Pl.'s Renewed Mot. for Att'y's Fees and Costs ("Def.'s Opp'n") [Dkt. #139]. After review of the motion, the applicable law, and the record herein, plaintiff's motion is DENIED.

## BACKGROUND

This case has been ongoing since 2003. This Court and our Circuit have outlined the facts and procedural history of plaintiff's FOIA request in numerous prior opinions. *See generally Morley v. CIA*, 699 F. Supp. 2d 244 (D.D.C. 2010) ("*Morley III*"); *Morley v. CIA*, 453 F. Supp. 2d 137 (D.D.C. 2006) ("*Morley I*"), *aff'd in part, rev'd in part*, 508 F.3d 1108 (D.C. Cir. 2007) ("*Morley II*"). Indeed, this is plaintiff's second request for attorney's fees, and the specific facts relevant to his fee request are detailed in *Morley v.*

*CIA*, 828 F. Supp. 2d 257 (D.D.C. 2011) ("*Morley IV*"), *vacated*, 719 F.3d 689 (D.C. Cir. 2013) ("*Morley V*"). Accordingly, a brief summary will suffice here.

Morley is a journalist and news editor. *Morley II*, 508 F.3d at 1113. On July 4, 2003, Morley submitted a request under FOIA to the CIA for "all records pertaining to CIA operations officer George Efythron Joannides." Pl.'s Mot., Exh. 1 [Dkt. #135-3]. The letter makes clear that Morley sought information connected to President John F. Kennedy's assassination. *See id.* (explaining that the documents sought would "shed new light on the assassination of President Kennedy on November 22, 1963"). The CIA responded in the beginning of November, 2003, with a letter explaining that the National Archives and Records Administration ("NARA") had a public collection of CIA records related to the JFK assassination, which was searchable online. Pl.'s Mot., Exh. 2 [Dkt. #135-4]. The CIA directed him to submit his request to NARA and did not release any records directly to Morley at that time. *Id.*

Morley subsequently filed suit in this Court on December 16, 2003, to enforce his FOIA request. *Morley II*, 508 F.3d at 1113. After further processing of the request, along with an appeal up to our Circuit, the CIA ultimately provided Morley with a total of 524 responsive records (some of which were segmented and/or redacted). *Morley IV*, 828 F. Supp. 2d at 260. Of those records, 113 were from the files the CIA previously had transferred to NARA. *Id.*

Morley then moved this Court for attorney's fees. *Id.* at 261. Applying the four-factor standard courts in this Circuit use to determine whether a FOIA plaintiff is entitled

to an award of attorney's fees, *see Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992). , *superseded by statute on other grounds,* OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, I concluded that Morley was not so entitled, *Morley IV*, 828 F. Supp. 2d at 265-66.[1]

Morley appealed. The Circuit vacated and remanded with instructions to "apply the four-factor standard in a manner consistent with *Davy* [*v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008)]," a case in which our Circuit "recently elaborated on one of the four factors, the public-benefit factor." *Morley V*, 719 F.3d at 690. The opinion did not mention this Court's analysis of any of the other three factors. Morley has now filed a Renewed Motion for an Award of Attorney's Fees and Costs.[2] Pl.'s Mot.

## ANALYSIS

FOIA permits a court to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). The FOIA attorney fee provision was *not* designed as a "reward for any litigant who successfully forces the government to disclose information it wished to withhold." *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C.Cir. 1977). Instead, it has "a more limited purpose—to remove the incentive for administrative resistance to disclosure requests

---

[1] In its original opposition to Morley's fee request, the CIA did not contest whether Morley is *eligible* to receive attorney's fees, the other requirement a plaintiff must fulfill to receive an award. *See Morley IV*, 828 F. Supp. 2d at 261 (citing *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984)).
[2] Plaintiff's Unopposed Motion for Leave to File Renewed Motion for Award of Attorney's Fees Out of Time [Dkt. #134] is granted, as is Plaintiff's Motion for Leave to File Supplemental Memorandum [Dkt. #141].

based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." *Id.* With this limited purpose in mind, a plaintiff seeking fees must satisfy a two-part inquiry. *See Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984). The plaintiff must be both "eligible" for an award, in that he has "substantially prevailed,"[3] and "entitled" to an award. *Id.*

A court in this Circuit analyzing whether a plaintiff is "entitled" to a fee award must consider at least the following four factors: "1) the public benefit derived from the case; 2) the commercial benefit to the plaintiff; 3) the nature of the plaintiff's interest in the records; and 4) whether the government has a reasonable basis for withholding the requested information." *Cotton v. Heyman*, 63 F.3d 1115, 1117 (D.C. Cir. 1995). No single factor is given dispositive weight,[4] and legislative history demonstrates that Congress intended courts to retain "broad discretion when considering a request for attorney fees." *Nationwide Bldg. Maint.*, 559 F.2d at 714.

When it remanded this case to me for reconsideration, our Circuit Court noted its elaboration on the public benefit factor in *Davy v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008), and instructed me "to apply the four-factor standard in a manner consistent with *Davy*." *Morley V*, 719 F.3d at 690. Accordingly, I have reviewed the facts, new briefing, and

---

[3] In response to plaintiff's renewed motion for fees, the CIA does contest whether plaintiff is eligible. Def. Opp'n at 6-7. For the reasons described herein, I conclude that plaintiff is not entitled to fees, and do not consider the eligibility question.

[4] Of course, "where the government can show that information disclosed after initial resistance was nonetheless exempt from the FOIA a plaintiff should not be awarded attorney fees under section 552(a)(4)(E)." *Nationwide Bldg. Maint.*, 559 F.2d at 712 n.34.

relevant law in this case, including *Davy*. Further consideration of our Circuit's elaboration on the public benefit factor in *Davy*, however, does not alter my original conclusion that "this litigation has yielded little, if any, public *benefit*—certainly an insufficient amount to support an award of attorney's fees." *Morley IV*, 828 F. Supp. 2d at 262.

A.  **Public Benefit Factor**

Evaluation of the public benefit factor "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy*, 550 F.3d at 1159. Although "[t]he release of any government document benefits the public by increasing citizens' knowledge of their government," Congress did not intend for this vague benefit to entitle a plaintiff to fees. *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979). Instead, the public benefit factor weighs in plaintiff's favor "where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Id.* (internal quotation marks omitted).

When it remanded this case, the Circuit noted that *Davy* "concerned a request for records related to President Kennedy's assassination" and had stated "that records 'about individuals allegedly involved in President Kennedy's assassination[] serve[] a public benefit.'" *Morley V*, 719 F.3d at 690 (quoting *Davy*, 550 F.3d at 1159) (alteration in original). However, the *Davy* court did not make a broad statement that *all* records "about individuals allegedly involved in President Kennedy's assassination" benefit the

public. 550 F.3d at 1159. Instead, its conclusion was a much more limited, case-specific one that "*[t]he information Davy requested*—about individuals allegedly involved in President Kennedy's assassination—serves a public benefit." *Davy*, 550 F.3d at 1159 (emphasis added). The *Davy* Court's description of the documents at issue does not create a category of records that automatically satisfy the first factor based on a plaintiff's claims of a relationship to the assassination. The Court must look deeper.

Indeed, analysis of the public benefit factor is a fact-based and document-specific inquiry that must be undertaken on a case-by-case basis. *See Cotton*, 63 F.3d at 1120 ("The only way to comport with this directive is to evaluate the specific documents at issue in the case at hand."). Although Morley and Davy are similar plaintiffs in that they both sought documents regarding individuals they claimed were related to the Kennedy assassination, the factual circumstances are sufficiently distinct so as to support different conclusions on the public benefit in their respective cases.

In *Davy*, everyone[5] agreed with—or at least did not contest—the fact the released documents provided "important new information bearing on the controversy over former [District Attorney Jim] Garrison's contention that the CIA was involved in the [Kennedy] assassination plot." *Id.* at 1159 (internal quotation marks omitted) (first alteration in original). Here, however, the importance of the new information released as a result of Morley's FOIA request is fiercely contested. *See* Def.'s Opp'n at 8-19.

---

[5] This includes this Court, which had concluded below that "this factor favors the plaintiff." *Davy v. CIA*, 496 F. Supp. 2d 36, 38 (D.D.C. 2007).

The information that the CIA released pursuant to Morley's FOIA request can be placed into two broad categories: documents that the CIA previously had transferred to NARA and documents it had not. The CIA agrees that the released records identical to the ones transferred to NARA are "unquestionably assassination-related" and "ordinarily would give rise to public benefit." *Id.* at 10-11. But these documents already were in the public domain and available for consumption at the National Archives. Whether documents are already in the public domain may be irrelevant on the merits of a FOIA request, but that fact can be taken into consideration when evaluating entitlement to attorney's fees. *See Tax Analysts*, 965 F.2d at 1094; *Davy*, 550 F.3d at 1159 (noting that "[a]t least one of the requested documents was not previously available to the public" when finding that the public benefit factor favored plaintiff). Here, the CIA's release to Morley of records identical to those publicly available at the National Archives (with a searchable index online) does not further the public benefit.

Accordingly, Morley emphasizes four records *not* previously publicly available to support his claim that the public benefit factor weighs in his favor. Pl.'s Mot. at 24-27. The first two are "travel" documents Morley originally claimed demonstrate that Joannides traveled to New Orleans on two specific dates—April 1, 1964, and May 20, 1964. *Id.* at 24-25; *see* Pl.'s Mot., Attachments 1-2 [Dkt. #135-1; 135-2]; Pl.'s Mot., Morley Decl. ¶¶8-9 [Dkt. 135-9]. This, Morley argued, demonstrates Joannides was performing CIA activities in some way related to the Warren Commission's investigation of the assassination. Pl.'s Mot. at 24-25. In response, the government pointed out,

correctly, that although the documents were *signed* on the dates in question, they indicate only that New Orleans was Joannides's "home leave residence" and shed no light on where Joannides was on any particular date. Def. Opp'n at 14; *see* Pl.'s Mot., Attachments 1-2. Morley now argues that the mere fact that Joannides may have been in New Orleans at some point between 1962 and 1964 is new information related to the Kennedy assassination because Lee Harvey Oswald was also in New Orleans during that period. Reply to Def.'s Opp'n at 10-11.

Morley also relies on a photograph and citation relating to the Career Intelligence Medal Joannides received in 1981 after he had retired from the CIA.[6] Pl.'s Mot., Morley Decl. ¶¶10-13; Eighth Decl. of J. Morley, Attachment 2 [Dkt. #119-1]. The citation declares the medal was awarded "in recognition of [Joannides's] exceptional achievement with the Central Intelligence Agency for more than twenty-eight years." Eighth Decl. of J. Morley, Attachment 2. Morley argues that by awarding Joannides a medal for his service over the totality of his career, the CIA is reflecting its "'approval of his conduct as it related to the JFK assassination issues he dealt with'" at particular points during his career. Pl.'s Reply to Def.'s Opp'n at 7 (quoting Eighth Decl. of J. Morley ¶4). Unfortunately for plaintiff, recognition of "overall career performance," Eighth Decl. of J. Morley, Attachment 2, upon retirement does not reflect institutional approval of any specific action an employee undertook during that career.

---

[6] My review of the record does not reveal any filing of the photograph with this Court, only the citation and a record of the ceremony that notes a photographer was present. *See* Eighth Decl. of J. Morley, Attachment 2 [Dkt. #119-1].

8

The CIA does not dispute that these four records convey newly-released information not already in the public domain. But nothing other than pure speculation connects any of it to the Kennedy assassination. What do the new documents Morley points to tell us? Joannides had a home leave residence in the same city where Kennedy's assassin conducted some activities, and the two may—or may not—have been in that city at the same time. Joannides was recognized for a long career of service in the CIA, and the CIA did not condemn him for any particular Kennedy-assassination-related activities in a way that prevented positive recognition for his overall career. That is about it. This information is not "likely to add to the fund of information that citizens may use in making vital political choices." *Fenster*, 617 F.2d at 744 (internal quotation marks omitted).

My evaluation of the significance of this information to the public also takes into consideration the language the *Morley V* Court highlighted from a footnote in *Davy*: "'[P]laintiffs who obtain information that, while arguably not of immediate public interest, nevertheless enables further research ultimately of great value and interest, such as here the public understanding of a Presidential assassination'" should not be foreclosed from fees. *Morley V*, 719 F.3d at 690 (quoting *Davy*, 550 F.3d at 1162 n.3). I do not interpret the *Davy* Court's footnote as holding that *every* new piece of information released pursuant to a FOIA request benefits the public because it may, someday, in some way, contribute to research on a matter of public import. The public benefit factor requires more than speculation of an unknown potential future benefit. Again, plaintiff

9

here has pointed to nothing in the newly-released information demonstrating an actual relationship to the Kennedy assassination or any other topic of "great value and interest."[7]

In concluding that this litigation has benefited the public only slightly, if at all, I do not pass any judgment on the importance of information regarding Joannides's relationship with Oswald, the Kennedy assassination, or the Warren Commission. I am focused on the particular documents at issue in this case. *See Cotton*, 63 F.3d at 1120. Here, the new documents released to the public shed very little, if any, light on Joannides's involvement in the events surrounding the Kennedy assassination. Plaintiff has not provided the Court with anything beyond conjecture in arguing their relevance and importance.

## B. Four Factor Standard

Our Circuit Court directed me to reevaluate the four factor standard in light of *Davy*'s elaboration on the public benefit factor. *Morley V*, 719 F.3d at 690. My analysis of the other factors remains the same.[8] In short, without repeating the analysis here, Morley had "a sufficient private interest in pursuing these records without attorney's fees" (second and third factors) and the "CIA has advanced reasonable legal positions"

---

[7] Morley raises a number of additional arguments as to why the public benefits here, none of which are persuasive. First, he argues that the news media has shown interest in covering the disclosed records. Pl.'s Mot. at 28-30. But he fails to tie that coverage to any of the newly-released documents rather than those that were already available to the public. He also contends that the public learned about documents the CIA continues to withhold. Pl.'s Reply at 12-13. As I stated previously, these documents were withheld properly under FOIA. *See Morley III*, 699 F. Supp. 2d at 252-59. Finally, he argues that this case sets an important precedent by requiring the CIA to search and produce operational records. Pl.'s Reply at 13-14. However, "the establishment of a legal right to information [is not] a public benefit for the purpose of awarding attorneys' fees." *Chesapeake Bay Found., Inc. v. Dep't of Agric.*, 108 F.3d 375, 377 (D.C. Cir. 1997) (citing *Cotton*, 63 F.3d at 1120).

[8] Indeed, my previous analysis of the second and third factors already directly cites *Davy*. *Morley IV*, 828 F. Supp. 2d at 264.

10

(fourth factor). *Morley IV*, 828 F. Supp. 2d at 265. When considering all four factors together, any public benefit that may exist from this litigation is insufficient to support an award of attorney's fees, particularly because the fourth factor "weighs strongly in favor of the CIA." *Id.* Plaintiff, therefore, is not entitled to attorney's fees.

## CONCLUSION

Thus, for all the foregoing reasons, plaintiff's Renewed Motion for Attorney's Fees and Costs [Dkt. #135] is DENIED. An appropriate order shall accompany this Memorandum Opinion.

*/s/ Richard J. Leon*
RICHARD J. LEON
United States District Judge